**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**WILLIAM VLACH,**

                **Plaintiff,**                 1:12-cv-1758
                                                     (GLS/RFT)

                    v.

**PHILIP STAIANO,** in his
individual capacity,

                **Defendant.**
_____

**APPEARANCES:**                        **OF COUNSEL:**

**FOR THE PLAINTIFF:**
Charny & Associates                 NATHANIEL K. CHARNY, ESQ.
9 West Market Street                THOMAS E. FEENEY, ESQ.
Suite B
Rhinebeck, NY 12572

Office of Russell G. Wheeler        RUSSELL G. WHEELER, ESQ.
9 West Market Street
Rhinebeck, NY 12572

**FOR THE DEFENDANT:**
HON. ERIC T. SCHNEIDERMAN     KEVIN M. HAYDEN
New York Attorney General          Assistant Attorney General
The Capitol
Albany, NY 12224

**Gary L. Sharpe
Chief Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Plaintiff William Vlach commenced this action against defendant Philip Staiano, in his individual capacity, pursuant to 42 U.S.C. § 1983, alleging violations of the Fourth and Fourteenth Amendments, and New York state law, for false arrest, malicious prosecution, and abuse of process. (Compl., Dkt. No. 1.) Pending before the court is Staiano's motion for summary judgment. (Dkt. No. 22.) For the reasons that follow, the motion is granted.

## II. **Background**[1]

During the time relevant to this action, both Vlach and Staiano were employed by the New York State Office for People with Developmental Disabilities, specifically with the Developmental Disabilities Services Office (DDSO) at the Granite Individual Residential Alternative. (Def.'s Statement of Material Facts (SMF) ¶¶ 1-3, Dkt. No. 22, Attach. 13.) As part of his job duties, Staiano was responsible for supervising several residences and investigating complaints of abuse made by the consumer residents. (*Id.* ¶¶ 3, 5.)

On September 5, 2010, J.S., a Granite resident, complained of pain in his left arm. (*Id.* ¶ 9.) Upon being advised of this complaint, Staiano

---

[1] Unless otherwise noted, the facts are not in dispute.

<p></p>
2

began an investigation by speaking to J.S., as well as the staff member who first received the complaint. (*Id.* ¶¶ 10, 14.) J.S. informed Staiano that Vlach, a Developmental Aid at Granite, had "thrown him against the cabinets in the kitchen." (*Id.* ¶ 1; Dkt. No. 22, Attach. 5 at 22-23.) After reporting these findings to his supervisor, Staiano was directed to place Vlach on administrative leave and report the incident to the New York State Police. (Def.'s SMF ¶¶ 17-18; Dkt. No. 22, Attach. 5 at 22-23.)

The State Police began their own investigation on September 7, 2010 by interviewing J.S. (Def.'s SMF ¶ 25.) J.S. indicated that he had become angry with an aide who denied him a snack, and he then threw his mouthwash at her, picked up a chair, and told the aide to stay away from him. (*Id.* ¶ 28.) At this point, Vlach entered the area, and, upon observing this confrontation, "grabbed [J.S.] and slammed him into the kitchen cabinets," and then later "grabbed him and pushed all of his weight on to him[,] forcing him against the wall and the handrail going up the stairs." (*Id.* ¶¶ 29-30; Dkt. No. 22, Attach. 8 at 7, 14.) The State Police investigator also interviewed Michael Carle, another DDSO employee who was working at Granite on the night in question, who reported that he observed J.S. attempt to strike an aide, at which point Vlach "grabbed [J.S.] and threw

3

him in the kitchen cabinet and wall . . . using much more force than was needed for the circumstances." (Dkt. No. 22, Attach. 8 at 8.) The investigation file indicates that Staiano spoke with the investigator several times during the course of the investigation in order to respond to subpoenas and other requests for relevant documents and records. (*Id.* at 7-9.)

Following the investigation, Vlach was arrested and ultimately charged with two counts of assault and one count of falsifying business records. (Def.'s SMF ¶¶ 57, 66.) In connection with the charges, J.S. provided a supporting deposition which indicates that Vlach "shoved [J.S.] real hard against the kitchen cabinets and then pushed all of his weight against [him]." (Dkt. No. 22, Attach. 8 at 14.) Vlach was arraigned, and at a preliminary hearing, Justice Marsha Weiss of the Town of Ulster Justice Court determined that there was probable cause to arrest and charge Vlach with reckless assault and filing a false report. (Def.'s SMF ¶¶ 62, 79; Dkt. No. 22, Attach. 5 at 1, 40.) A bench trial was held on the two charges in April 2012; at the conclusion of the trial, Justice Weiss found that the accusatory instrument for the filing a false report charge was insufficient as a matter of law, and that the prosecution had failed to meet its burden of

proof on the assault charge, and she therefore granted Vlach's motion to dismiss the charges. (Dkt. No. 22, Attach. 6 at 102-04.) Vlach subsequently commenced this suit, alleging false arrest, malicious prosecution, and abuse of process. (*See generally* Compl.)

### III. **Standard of Review**

The standard of review pursuant to Fed. R. Civ. P. 56 is well established and will not be repeated here. For a full discussion of the standard, the court refers the parties to its decision in *Wagner v. Swarts*, 827 F. Supp. 2d 85, 92 (N.D.N.Y. 2011), *aff'd sub nom. Wagner v. Sprague*, 489 F. App'x 500 (2d Cir. 2012).

### IV. **Discussion**

As a threshold matter, the court notes that, in his response to the summary judgment motion, Vlach argues that a declaration from New York State Police Investigator Joseph Auriemma, (Dkt. No. 22, Attach. 7), which Staiano has relied on in his summary judgment motion, should not be considered by the court, as Staiano did not disclose Auriemma as a potential source of discoverable information in his Rule 26 disclosures. (Dkt. No. 26 at 2-4.) Staiano argues that his inadvertent failure to disclose Auriemma was harmless, and that Vlach was sufficiently aware that

5

Auriemma was a relevant source of information, such that Auriemma's declaration should not be precluded. (Dkt. No. 35 at 3-4.)

Generally, otherwise reliable and relevant testimony or evidence may still be inadmissible if it was not properly and timely disclosed pursuant to Federal Rule of Civil Procedure 26. *See* Fed. R. Civ. P. 37(c)(1); *see also* Fed. R. Civ. P. 26(a)(1)(A)(i) (requiring that parties provide "the name . . . of each individual likely to have discoverable information . . . that the disclosing party may use to support its claims or defenses"). Specifically, Rule 37 provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). "Despite this rule's seemingly harsh mandate, courts have held that '[i]mposition of sanctions under Rule 37 is a drastic remedy and should only be applied in those rare cases where a party's conduct represents flagrant bad faith and callous disregard of the Federal Rules of Civil Procedure.'" *State v. Almy Bros., Inc.*, No. 90-CV-818, 1998 WL 57666, at *9 (N.D.N.Y. Feb. 4, 1998) (quoting *Hinton v. Patnaude*, 162 F.R.D. 435, 439 (N.D.N.Y. 1995)).

6

Here, although Vlach objects to the court's consideration of Auriemma's declaration, he also explicitly states that he "does not seek to preclude [the court's] consideration" of the exhibits submitted in support of the same declaration. (Dkt. No. 26 at 2, n.1.) Notably, each of the assertions in Auriemma's declaration cites to, and is supported by, these exhibits. (Dkt. No. 22, Attach. 7.) In light of the fact that Vlach does not object to the underlying exhibits submitted with the Auriemma declaration, and merely objects to the declaration itself, which is amply supported by such exhibits, Staiano's failure to disclose Auriemma, as required by Rule 26, was harmless under these circumstances. Accordingly, Vlach's request that the court not consider this evidence is denied. The court will now turn to the merits of Staiano's summary judgment motion.

### A. False Arrest

With respect to Vlach's false arrest cause of action, Staiano argues that there was probable cause for Vlach's arrest, and that the arrest resulted from the State Police's independent investigation of the incident, not from any efforts expended by Staiano. (Dkt. No. 22, Attach. 14 at 12-15; Dkt. No. 35 at 5-7.) In response, Vlach asserts that there are questions of fact which preclude summary judgment on his false arrest claim. (Dkt.

No. 26 at 4-10.) Specifically, Vlach's theory appears to be that Staiano's failure to disclose a physical altercation that Staiano allegedly had with J.S. days before Vlach's altercation with J.S., which Vlach asserts was the true cause of J.S.'s injuries, is sufficient to subject Staiano to liability for false arrest. (*Id.*; *see generally* Compl.)

In general, the torts of false arrest and false imprisonment under 42 U.S.C. § 1983 and New York State law are "substantially the same" except for "the requirement that the constitutional tort be under color of state law." *Posr v. Doherty*, 944 F.2d 91, 96 (2d Cir. 1991) (internal quotation marks and citation omitted); *see Jacques v. Sears, Roebuck & Co.*, 30 N.Y.2d 466, 473 (1972). A claim for false arrest or imprisonment brought pursuant to § 1983 "rest[s] on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (citation omitted). To establish a false arrest claim under either federal or New York law, a plaintiff must demonstrate that: "(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement[,] and (4) the confinement was not otherwise privileged." *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 118 (2d

8

Cir. 1995) (internal quotation marks and citations omitted).

Merely providing information to law enforcement authorities, who exercise their own judgment whether or not to arrest a suspected individual, does not amount to liability for false arrest; rather, "[t]o be liable for false imprisonment, the plaintiff must prove that the defendant *intended* or *instigated* the confinement of the plaintiff." *King v. Crossland Sav. Bank*, 111 F.3d 251, 256-57 (2d Cir. 1997). Notably, "[w]hen police independently act to arrest a suspect on information provided by a party, that party is not liable for false imprisonment—even if the information provided is later found to be erroneous." *Id.* at 257 (citation omitted). Rather, to impose liability for false imprisonment on "one who causes or directs an arrest or imprisonment," the plaintiff must show that the defendant "affirmatively induced" the arrest by "taking an active part in the arrest and procuring it to be made . . . to the point where the officer is not acting of his own volition." *Curley v. AMR Corp.,* 153 F.3d 5, 13-14 (2d Cir. 1998) (internal quotation marks and citations omitted).

Here, it is undisputed that the State Police conducted their own investigation, which revealed that both the victim, J.S., and an eyewitness to the incident, Carle, both said that Vlach threw J.S. into the kitchen

9

cabinets. (Def.'s SMF ¶¶ 25-30, 41-45; Dkt. No. 22, Attach. 8 at 7-9.) While Vlach argues that Staiano's failure to disclose his alleged, earlier altercation with J.S. was the reason for Vlach's arrest, there is no indication in the record that the decision to arrest was motivated by information provided by Staiano and not the State Police's own investigation, nor is there any indication that Staiano made the decision to arrest or induced the police to arrest Vlach. *See Nevin v. Citibank, N.A.*, 107 F. Supp. 2d 333, 347-48 (S.D.N.Y. 2000) (finding no false imprisonment claim against party who provided information to police where police subsequently "conducted their own investigation and reached their own independent conclusions"). Accordingly, the false arrest claim against Staiano is dismissed.

## B. <u>Malicious Prosecution</u>

The parties make similar arguments in connection with the malicious prosecution cause of action. In support of his motion, Staiano argues that there is no evidence which would indicate that he misled or pressured the prosecutor into pursuing charges against Vlach, and thus there is no basis to hold Staiano liable for malicious prosecution. (Dkt. No. 22, Attach. 14 at 15-16; Dkt. No. 35 at 8-9.) In response, Vlach argues that Staiano should be considered to have initiated the prosecution against Vlach because he

withheld material evidence from the State Police and the court. (Dkt. No. 26 at 11.) For similar reasons as discussed above, Staiano is entitled to summary judgment on this claim.

Like false arrest and imprisonment, the elements of malicious prosecution under § 1983 and New York law are the same. *See Cook v. Sheldon*, 41 F.3d 73, 79 (2d Cir. 1994). To prevail on a malicious prosecution claim, a plaintiff must establish that: "(1) the defendant commenced a criminal proceeding against him; (2) the proceeding ended in the plaintiff's favor; (3) the defendant did not have probable cause to believe the plaintiff was guilty of the crime charged; and (4) the defendant acted with actual malice." *Id.* (citation omitted); *see Rothstein v. Carriere*, 373 F.3d 275, 282 (2d Cir. 2004).

A plaintiff in a malicious prosecution case must prove that the defendant "initiated" the criminal proceeding; as the Second Circuit has articulated, "reporting a crime to law enforcement and giving testimony does not constitute the 'initiation' of a criminal prosecution." *Rothstein*, 373 F.3d at 293-94. Rather, in order to satisfy this element, "it must be shown that [the] defendant played an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act.'" *Rohman*

11

*v. N.Y.C. Transit Auth.*, 215 F.3d 208, 217 (2d Cir. 2000) (quoting *DeFilippo v. Cnty. of Nassau*, 183 A.D.2d 695, 696 (2d Dep't 1992)).

Here, although the parties dispute the true extent to which Staiano communicated with the State Police during their investigation—Staiano asserts that his only participation was meeting with the District Attorney on the day he testified in court, (Def.'s SMF ¶ 19), while Vlach points to numerous other interactions, including Staiano notifying the police of the incident, being interviewed by police, providing authorities with J.S.'s medical records and Staiano's investigation file, and testifying at pretrial proceedings, (Dkt. No. 28 ¶ 19)—even if Vlach's version of events is true, it would not demonstrate that Staiano did anything more than respond to police requests and subpoenas for documents and records. In other words, there is no evidence that, after Staiano concluded his investigation and provided his report and other requested documents to the police, he did anything further with respect to Vlach's arrest or prosecution, or that he played an "active role in the prosecution." *Rohman*, 215 F.3d at 217; *see Coleman v. City of N.Y.*, 49 F. App'x 342, 345 (2d Cir. 2002) (dismissing malicious prosecution claim where plaintiff did "not present[ ] any evidence to show that the defendants subsequently misled or pressed the prosecutor

12

in continuing [the plaintiff]'s prosecution").

## C. <u>Abuse of Process</u>

Lastly, Staiano argues that Vlach's abuse of process claim should be dismissed because there is no evidence that Staiano made the ultimate decision to to arrest or prosecute Vlach, and therefore he did not employ any legal process against Vlach for any improper purpose. (Dkt. No. 22, Attach. 14 at 18-19; Dkt. No. 35 at 9-10.) Vlach again argues that Staiano failed to disclose his earlier incident with J.S., and did so in order to improperly procure Vlach's arrest. (Dkt. No. 26 at 13-15.) Vlach's abuse of process claim fails for similar reasons as discussed above.

"In New York, a malicious abuse of process claim lies against a defendant who (1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." *Cook*, 41 F.3d at 80.

Here Vlach has submitted no evidence to indicate that Staiano abused any legal process. Staiano merely notified the police of Vlach's alleged crime, at the direction of his supervisor. (Def.'s SMF ¶ 18.) The police then conducted their own investigation and decided to arrest, and

13

ultimately prosecute, Vlach. Although Vlach argues that Staiano's failure to disclose the earlier incident between himself and J.S. constituted an improper procurement of Vlach's arrest, (Dkt. No. 26 at 13-14), the alleged earlier incident is immaterial to the police's independent investigation, which revealed, from sources independent of Staiano, that on September 4, there was a physical altercation between Vlach and J.S. (Dkt. No. 22, Attach. 8 at 7-8.) As further discussed above, *see supra* Parts IV.A & B, Staiano did not "affirmatively instigate[ ] or procure[ ] [Vlach's] arrest." *Savino v. City of N.Y.*, 331 F.3d 63, 77 (2d Cir. 2003) (internal quotation marks and citation omitted). Because there is no evidence that Staiano engaged in conduct for the purpose of promoting or facilitating Vlach's arrest and prosecution, Staiano is granted summary judgment on this cause of action.[2]

## D. State Law Claims

For the same reasons articulated above with respect to Vlach's constitutional claims, Staiano's motion for summary judgment on the state law causes of action for false arrest, malicious prosecution, and abuse of

---

[2] Given that Staiano is granted summary judgment on all of Vlach's causes of action, it is unnecessary to discuss the parties' arguments regarding qualified immunity. (Dkt. No. 22, Attach. 14 at 19-21; Dkt. No. 26 at 15-17.)

14

process is granted, and these claims are also dismissed.

## V. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that Staiano's motion for summary judgment (Dkt. No. 22) is **GRANTED**; and it is further

**ORDERED** that Vlach's complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED** that the Clerk close this case; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

June 27, 2014
Albany, New York

Gary L. Sharpe
Chief Judge
U.S. District Court